# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAYNE BELCHER ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-7368** |
| **SHERIFF JOSEPH LOPINTO, III, ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendant Jefferson Parish's Motion to Dismiss (Doc. 18). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

Plaintiffs Jayne and Jimmy Belcher filed this lawsuit following the August 2017 suicide of their son, Joshua Belcher, at the Jefferson Parish Correctional Facility ("JPCC") in Gretna, Louisiana. Defendants in the suit include Jefferson Parish; its current sheriff, Joseph P. Lopinto, III; its former sheriff, Newell Normand, III; JPCC's health care provider, CorrectHealth Jefferson, L.L.C. ("CorrectHealth"); and CorrectHealth's insurer, Ironshore Specialty Insurance Co. Plaintiffs allege that Defendants violated 42 U.S.C. § 1983 and Louisiana law by failing to prevent Joshua Belcher's suicide.

1

On October 1, 2018, Jefferson Parish filed a Rule 12(b)(6) Motion to Dismiss Plaintiffs' claims against it.[1] Plaintiffs' oppose.[2] The Court heard Oral Argument on this Motion on November 1, 2018.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[3] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[4] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[5] The Court need not, however, accept as true legal conclusions couched as factual allegations.[6]

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[7] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.[8] Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.[9]

---

[1] *See* Doc. 18.
[2] *See* Doc. 21.
[3] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
[4] *Id.*
[5] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[6] *Iqbal*, 556 U.S. at 678.
[7] *Id.*
[8] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).
[9] *Lormand*, 565 F.3d at 255–57.

## LAW AND ANALYSIS

Plaintiffs allege that Defendant Jefferson Parish violated § 1983 and the Eighth and Fourteenth Amendments of the United States Constitution by hiring CorrectHealth to provide medical care at JPCC despite knowing that the company provided subpar services, and that it was CorrectHealth's subpar services that caused their son's suicide.[10] Plaintiffs also claim Jefferson Parish committed the state law tort of intentional infliction of emotional distress.[11] Jefferson Parish argues in its Motion that Plaintiffs fail to state a claim against it under Rule 12(b)(6).[12] The Court will consider the federal claims against Jefferson Parish before turning to the state law claim.

### I. Plaintiffs Fail to State a Federal Claim Against Jefferson Parish

Plaintiffs concede in their opposition to Jefferson Parish's Motion that the parish is not *vicariously* liable for anything the Sheriffs or CorrectHealth allegedly did to cause Joshua Belcher's death.[13] Plaintiffs maintain, however, that Jefferson Parish is *directly* liable under § 1983 for hiring CorrectHealth because the parish allegedly knew the company would provide "grossly negligent and unconstitutionally infirm" medical care to inmates at JPCC.[14] Plaintiffs allege that this conduct by Jefferson Parish violated the Eighth and Fourteenth Amendments of the United States Constitution, which in turn constituted a violation of 42 U.S.C. § 1983.

The Eighth Amendment requires prison officials to provide adequate medical care to their inmates.[15] A violation occurs "when a prison official's

---

[10] *See* Docs. 1, 21.
[11] Doc. 1.
[12] Doc. 18.
[13] *See* Doc. 21 at 7.
[14] *See id.*
[15] *See* Farmer v. Brennan, 511 U.S. 825, 832 (1994).

3

failure to act amounts to deliberate indifference to the prisoner's rights."[16] Similarly, the Fourteenth Amendment provides inmates a constitutional right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials."[17] In either case, then, liability does not attach without "deliberate indifference" on the part of the jail or its governing authority.[18]

"Deliberate indifference is an extremely high standard to meet."[19] "To demonstrate deliberate indifference, a plaintiff must show that public officers were aware of facts from which an inference of a substantial risk of serious harm to an individual could be drawn; that they actually drew the inference; and that their response indicates subjective intention that the harm occur."[20]

Here, Plaintiffs have failed to allege facts sufficient to show that Jefferson Parish acted with deliberate indifference in hiring CorrectHealth to provide medical care at JPCC. Plaintiffs allege in their Complaint that Jefferson Parish hired CorrectHealth in 2015 and then renewed the contract in February 2017.[21] Plaintiffs further allege that CorrectHealth's conduct contributed to three suicides at JPCC between August and September in 2017, including Joshua Belcher's suicide on August 17, 2017.[22] But the Complaint fails to allege that Jefferson Parish was aware of particular *facts* from which an inference of a *substantial* risk of *serious* harm to a particular *individual*

---

[16] Hare v. City of Corinth, Miss., 74 F.3d 633, 640 (5th Cir. 1996) (citing *Farmer*, 511 U.S. at 833).
[17] *See* Thompson v. Upshur Cty., TX, 245 F.3d 447, 457 (5th Cir. 2001).
[18] *See Hare*, 74 F.3d at 650 (noting that the same deliberate indifference standard applies to an inmate's inadequate medical care claims under the Eighth and Fourteenth Amendments).
[19] Sanchez v. Young Cty., Texas, 866 F.3d 274, 280 (5th Cir. 2017).
[20] *Id.*
[21] Doc. 1 at 6.
[22] *Id.*

4

could be drawn.[23] The conclusory allegation in the last paragraph of Plaintiffs' Complaint that Jefferson Parish was "aware of CorrectHealth's derelict policies and did nothing to correct them" is insufficient to meet the high standard required for a showing of deliberate indifference. Moreover, even though Plaintiffs mention suicides that occurred at *other* correctional facilities managed by CorrectHealth in *other* states both before and after Jefferson Parish renewed its contract with the company, the Complaint fails to allege that Jefferson Parish *knew* of any such suicides when it hired CorrectHealth. In any event, even assuming Jefferson Parish *did* know about such suicides, such knowledge would not show a substantial risk of serious harm to any individual inmate at JPCC. There is no allegation that the problems encountered at the other facilities were systematic throughout CorrectHealth.

As the Fifth Circuit explained in *Sanchez v. Young County*, an inmate's "decision to take her own life is tragic. [A parish], however, cannot be held responsible for fatal decisions [the inmate] made that were, under all the circumstances, not obvious to government employees."[24] Plaintiffs, therefore, fail to state a federal claim for relief against Defendant Jefferson Parish that is plausible on its face.

## II. Plaintiffs Fail to State a State Law Claim Against Jefferson Parish

Louisiana Revised Statutes § 15:703 requires the governing authority of each parish to provide medical services for inmates at parish jails.[25] The statute mandates that parishes either appoint a physician or enter into a

---

[23] *See Sanchez*, 866 F.3d at 280.
[24] *Id.* at 281.
[25] LA. REV. STAT. § 15:703(A)-(B).

5

contract with a health care provider to satisfy the statutory obligation.[26] The statute further provides:

> The parish and its governing authority shall not be liable for any action arising as a result of the actions or inactions of the physician or health care provider, whether ex delicto or ex quasi delicto or ex contractu, by a prisoner or his representative to recover damages or any other losses, including those for the death of the prisoner, unless the governing authority exercises gross negligence or willful misconduct in the performance of its duties and obligations imposed by this Section, and such gross negligence or willful misconduct was a substantial factor in causing the injury.[27]

Thus, a parish is immune from tort claims alleging that a health care provider's conduct caused the death of a prisoner unless the parish exercised gross negligence or willful misconduct in hiring the health care provider, and that negligence or misconduct by the parish was a substantial factor in the prisoner's death.[28] Here, then, Jefferson Parish enjoys immunity from Plaintiffs' state law tort claim unless the parish engaged in gross negligence or willful misconduct in hiring CorrectHealth to provide medical services to the Gretna jail and that gross negligence or willful misconduct was a substantial factor in causing Joshua Belcher's death.

For reasons previously noted, Plaintiffs have not alleged facts to show that Jefferson Parish engaged in willful misconduct by hiring CorrectHealth. Nor have they alleged that anything Jefferson Parish did amounted to "gross negligence."[29] The crux of Plaintiffs' allegations is directed toward

---

[26] *Id.*
[27] *Id.* § 15:703(D).
[28] *See id. See also* Serigny v. Lafourche Par. Gov't ex rel. Randolph, 547 F. App'x 582, 584 (5th Cir. 2013) (discussing standard for parish liability under the statute).
[29] This Court recognizes that the Complaint alleges that "Jefferson Parish is directly liable . . . due to its policies and practices and its *grossly negligent* hiring, training, and supervision of the defendant CorrectHealth . . ." Doc. 1 at 4 (emphasis added). *See also id.* at 13. These allegations, however, represent legal conclusions and are thus insufficient to overcome a 12(b)(6) motion. *See Lormand*, 565 F.3d at 232.

CorrectHealth, Lopinto, and Normand. The allegations simply fail to state facts under which Jefferson Parish could be said to have acted with gross negligence in contracting with CorrectHealth to provide medical services at JPCC.[30] As such, Plaintiffs fail to state a state law claim for relief against Defendant Jefferson Parish that is plausible on its face.

## CONCLUSION

For the foregoing reasons, Defendant Jefferson Parish's Motion to Dismiss is **GRANTED**. All Plaintiffs' claims against Jefferson Parish are **DISMISSED WITHOUT PREJUDICE**.

Plaintiffs may amend their Complaint within 20 days of this Order to the extent that they can remedy the deficiencies identified herein.

New Orleans, Louisiana this 8th day of November, 2018.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[30] *See Serigny*, 547 F. App'x at 584–85 (affirming grant of summary judgment in favor of parish where plaintiff presented "no evidence of gross negligence on the part of the parish and no evidence that the parish's actions were a substantial cause" in an inmate's death).

7