**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| Jayne Belcher and Jimmy Belcher, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| Sheriff Joseph P. Lopinto, III, et al, | ) |
| | ) |
| Defendants. | ) |

No. 18-cv-7368
Judge Jane Triche Milazzo
Magistrate Joseph C. Wilkinson, Jr.
Section H, Division 2

**PLAINTIFFS' OPPOSITION TO CORRECT HEALTH
JEFEFRSON LLC'S OBJECTION TO THE MAGISTRATE'S ORDER AND REASONS**

NOW INTO COURT come plaintiffs Jayne Belcher and Jimmy Belcher who submit this brief in Opposition to CorrectHealth Jefferson LLC's ("CorrectHealth") Objection to the Magistrate's Order and Reason's on Plaintiff's Motion to Compel ("Objection"). [Rec. Doc. 83-1.]

**I.     The Magistrate's Decision to Produce the Psychological Autopsy Reports for the
Three Inmates Who Committed Suicide was Not Clearly Erroneous.**

The Magistrate granted Plaintiffs' Motion to Compel and ordered CorrectHealth to produce the Psychiatric Autopsies for the three inmates who committed suicide at the Jefferson Parish Correctional Center ("Gretna Jail"). *Magistrate Order*, at 4. The Magistrate overruled CorrectHealth's work product, attorney-client, and peer review privileges. *Id.* at 4-8. The Magistrate carefully reviewed each objection, relied upon bedrock law, and placed emphasis on deposition testimony, particularly the deposition of the corporate representative of CorrectHealth.

In overruling CorrectHealth's work product and attorney-client privilege objections, the Magistrate focused on unchallenged Fifth Circuit caselaw holding that, for these objections to apply, the "primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Magistrate Order*, at 4 (quoting *Udoewa v. Plus4 Credit Union*, 457 F.App'x 391, 393 (5th Cir. 2012) (quoting *In re Kaiser Alum. & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (emphasis added by Magistrate)).  Attorney-client privilege, the Magistrate ruled, is created when the communication is "for the purpose of obtaining legal advice".  *Magistrate Order*, at 5 (quoting *King v. Univ. Healthcare Sys., L.L.C.*, 645 F.3d 713, 720-21 (5th Cir. 2011) (emphasis added by Magistrate).

With these unremarkable legal principles at hand, the Magistrate looked to the deposition testimony to determine CorrectHealth's "primary motivating purpose" for creating Psychological Autopsies as well as its written policies.  *Magistrate Order*, at 5-6.  After dismissing defense counsel's gratuitous statements in a deposition, the Magistrate turned to CorrectHealth's corporate representative deposition.  *Id.*  The Magistrate found that Jean Llovet, CorrectHealth's Rule 30(b)(6) designee, testified that a Psychological Autopsy is created "regardless of whether a lawsuit is filed, whether there is a threat of litigation, or whether there is any attorney involvement following a particular suicide incident."  *Id.*  The Magistrate likely relied upon the following deposition testimony:

QUESTION:   Okay. Is the psychological autopsy performed regardless of whether there is an attorney involved?

ANSWER:   Yes.

QUESTION:   Is the psychological autopsy reviewed regardless of whether there is a lawsuit filed?

ANSWER:      It's always reviewed.

QUESTION:    Is it always created?

ANSWER:      In a suicide case.

QUESTION:   And so it's always created regardless of whether there is lawsuit, correct?

ANSWER:      Correct.

QUESTION:   And it's always going to be created regardless of whether there is a threat of

litigation, correct?

ANSWER:      Correct.

*Deposition of Jean Llovet, Rule 30(b)(6) Representative of CorrectHealth*, at 106-07, attached to

*Reply to Response to Motion to Compel Correct Health*, as Exhibit "A" [Rec. Doc. 72-1].

Next, the Magistrate looked to how CorrectHealth executed its written policy of when to

generate a Psychological Autopsy.  The Magistrate observed that CorrectHealth's written policy

provides that a Psychological Autopsy is completed within 30 days of every suicide in Gretna Jail

"in the ordinary course of business activities".  *Magistrate Order*, at 6 (emphasis in original). The

Magistrate then reviewed Ms. Llovet's testimony as well as David Jennings, another CorrectHealth

employee, to determine how the written policy was in fact implemented:

> Llovet testified that a mortality and morbidity meeting occurs between
> CorrectHealth's legal counsel and staff after every incident of suicide at JPCC,
> during which the decedent's psychological autopsy report is presented and analyzed
> by all present at the meeting for quality assurances purposes.  All CorrectHealth
> employees from its facilities in Louisiana and Georgia are invited to attend and
> participate in these meetings.  Llovett testified that the mortality and morbidity
> review is conducted as a matter of written policy by CorrectHealth, regardless of
> whether a lawsuit has been filed.

*Magistrate Order*, at 6 (internal citations omitted).

With the law, CorrectHealth's corporate representative deposition testimony, and CorrectHealth's own written policy providing unabashed consistency, the Magistrate overruled the objections of work product and attorney client:

> Based on the written policy and deposition testimony of Llovet and Jennings, I find that the psychological autopsy reports are generated in the ordinary course of CorrectHealth's business activities following suicides at JPCC, pursuant to a uniform written policy and are reviewed by CorrectHealth's legal counsel and staff for quality assurance purposes. Llovet's testimony that the reports are created and reviewed after "every incident" of suicide, regardless of prospective or actual litigation, establishes that the reports were neither communications made for the purpose of giving or obtaining legal advice nor created with the primary motivating purpose of aiding in possible future litigation. The mere fact that these reports were reviewed by CorrectHealth's legal counsel and are relevant to the present litigation is insufficient to protect them from discovery on attorney-client privilege or work product grounds.

*Magistrate Order*, at 6-7.

As for the peer-review/self-critical analysis privilege, the Magistrate again looked to uncontroversial Fifth Circuit caselaw. The Magistrate found that (1) federal law applied given that the privileged information relates to Plaintiffs' federal law claim; (2) there is no peer review privilege under federal common law or federal statutory law; (3) the Magistrate ordered its production with protections; (4) "the importance of protecting peer review information to any greater extent than that provided by the protective order is outweighed by the truth seeking function of the federal courts;" (5) CorrectHealth relied on cases involving diversity jurisdiction in which the plaintiff asserted only state law claims and no causes of action under federal law; and (6) "the requested reports are highly relevant to plaintiffs' Section 1983 claims in this matter pertaining to the suicide at JPCC[.]" *Magistrate Order*, at 7-8.

The Magistrate's order is based on the clear law, supported by CorrectHealth's own written policies, and clarified by CorrectHealth's corporate representative deposition testimony. The

Magistrate did not go beyond the bounds of bedrock discovery principles or Correcthealth's own policies and practices.  The Magistrate's Order should be affirmed.

## II.     Abundant Evidence and Caselaw Further Supports the Magistrate's Decision to Produce the Psychological Autopsies.

Documents created in the ordinary course of business are not protected by privilege. "Numerous courts have recognized experts' use of a psychological autopsy to determine an individual's manner of death — typically to determine whether or why an individual committed suicide." *Med. Assurance Co., Inc. v. Miller*, 779 F.Supp.2d 902, 912-13 (N.D. Ind. 2011) (citing *Blanchard v. Eli Lilly & Co.*, 207 F.Supp.2d 308, 313 n. 2 (D. Vt. 2002) ("The psychological autopsy is a generally accepted methodology for trying to determine what led to a suicide."); *see also In re Neurontin Mktg.*, No. 04-CV-10981, 2009 WL 3756328, at *6 (D. Mass. Aug. 14, 2009) (collecting cases discussing use of psychological autopsy to determine cause of suicide)).

"Documents and materials developed by a lawyer for use in or in anticipation of litigation are not protected by the attorney-client privilege." *Hodges, Grant & Kaufmann v. United States Government*, 768 F.2d 719, 721 (5th Cir.1985).  Rather, "[i]t focuses only on materials assembled and brought into being in anticipation of litigation. Excluded from the work-product doctrine are materials assembled in the ordinary course of business." *Piatkowski v. Abdon Callais Offshore*, L.L.C., No. Civ.A.99–3759, 2000 WL 1145825, at *2 (E.D.La. Aug. 11, 2000) (citing *United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982), *cert. denied*, 466 U.S. 944 (1984).

"[T]he [work-product] Doctrine is not an umbrella that shades all materials prepared by a lawyer, or agent of the client." *Piatkowski v. Abdon Callais Offshore, L.L.C.*, 2000 WL 1145825, at *2 (E.D.La. 2000); *see also Udeowa v. Plus4 Credit Union*, 457 F. App'x 391, 393 (5th Cir. 2012); *Nat'l Union Fire Ins. Co v. Murrary Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992).

5

It focuses only on materials assembled and brought into being in anticipation of litigation. *Id.* Excluded from the work-product doctrine are materials assembled in the ordinary course of business. *United States v. El Paso Co.*, 682 F.2d 530 (5th Cir.1982), *cert. denied*, 466 U.S. 944 (1984); *Hill Tower, Inc. v. Dep't of Navy*, 718 F. Supp. 562, 565 (N.D. Tex. 1988) ("The mere fact this report deals with facts, opinions, and recommendations that later may be the focus of litigation does not establish that there was the expectation of litigation when this document was drafted.").

Thus, "[i]f the document would have been created regardless of whether the litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation." *Global Oil Tools*, 2013 WL 1344622, at *6 (citing *S. Scrap Mat'l Co. v. Fleming*, Civ. A. No. 01-2554, 2003 WL 21474516, at *6 (E.D. La. June 18, 2003); *Piatkowski*, 2000 WL 1145825, at *1). Work product protection also does not extend to the underlying facts relevant to the litigation. *See generally Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981).

Even "[e]stablishing that a document was prepared after litigation was commenced is insufficient to prove that the document was prepared in anticipation of litigation . . . .  What is crucial is that 'the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" *Robinson v. Tex. Auto. Dealers Ass'n*, 214 F.R.D. 432, 449 (E.D.Tex.2003) (quoting *In re Kaiser Alum.*, 214 F.3d at 593) (emphasis added), *rev'd on other grounds*, 2003 WL 21911333 (5th Cir. July 25, 2003); *accord Global Oil Tools, Inc. v. Barnhill*, No. 12-1507, 2013 WL 1344622, at *6 (E.D. La. Apr. 3, 2013); *Guzzino v. Felterman*, 174 F.R.D. 59, 63 (W.D.La.1997); *Blockbuster Entm't Corp. v. McComb Video, Inc.*, 145 F.R.D. 402, 404 (M.D. La. 1992).

CorrectHealth has also not met its burden to protect the discovery via attorney-client privilege. "The burden to establish the applicability of the attorney-client privilege rests on the party who invokes it." *Hodges*, 768 F.2d at 721. "The privilege must be specifically asserted with respect to particular documents." *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir.1982), *cert. denied*, 466 U.S. 944 (1984). Since CorrectHealth has not made a showing that the mortality review and psychological autopsy was written by an attorney or their agent in anticipation of litigation, and its employees attest to the opposite, the attorney-client privilege does not apply.

The *peer review privilege* also does not apply. Congress and the Supreme Court chose not to recognize this privilege when it had the opportunity to do so. "The Supreme Court has been especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself [because] the balancing of conflicting interests of this type is particularly a legislative function." *University of Pa. v. EEOC*, 493 U.S. 182, 189 (1990) (citing *Branzburg v. Hayes*, 408 U. S. 665, 706 (1972)).

The Supreme Court has explicitly declined to introduce a peer-review privilege—sometimes referred to as a "self-critical analysis" privilege—into the federal common law. *Univ. of Pa.*, 493 U.S. at 189. This is consistent with the reluctance of federal courts to contravene the general rule in favor of admissibility by creating new privileges. *See, e.g., In re Grand Jury*, 103 F.3d 1140, 1150 (3d Cir. 1997) (rejecting parent-child privilege and noting that "privileges are disfavored"); *see also Nixon*, 418 U.S. at 710 (cautioning that privileges "are not lightly created nor expansively construed").

Contrary to CorrectHealth's view, *see Objection*, at 9, Congress twice had the opportunity to create a peer privilege and chose not to do so. "The Health Care Quality Improvement Act of 1986 "provide[d] qualified immunity for persons providing information to a professional review

body regarding the competence or professional conduct of a physician and "established confidentiality for information reported under the act, but did not establish confidentiality for peer review records or protect peer review records and materials from discovery and court subpoena." *Robertson v. Neuromedical Center*, 169 F.R.D. 80, 83-84 (M.D.La. 1996) (citations omitted). Congress amended the Act in 1987 to state that "nothing in this subchapter shall be construed as changing the liabilities or immunities under law or as preempting or overriding any State law." *Agster*, at 839 (quoting Pub. L. No. 100-177, § 402(c)).

As Congress has twice had occasion and opportunity to consider the privilege and not granted it either explicitly or by implication, there exists a general objection to doing so: "The absence of such a privilege in this statute is evidence that Congress did not intend these records to have the level of confidentiality and protection advanced by the hospitals and provided in the state statute." *Robertson*, 169 F.R.D. at 84.

Furthermore, peer review privilege does not apply because federal rather than state law applies to privileges in this case. CorrectHealth relies on the peer review privilege according to Louisiana law. Specifically, it argues that the psychological autopsy is protected by Louisiana state law that protects "peer review, policy making, and remedial action.." Opp, at 4-5 (citing La. R.S. 44:7 and La. R.S. 13:3715.3).

However, the Magistrate correctly found that federal privilege law applies in cases involving federal and state law claims. *Magistrate Order*, at 7 (citing *Rdzanek v. Hosp. Serv. Dist. No. 3*, 2003 WL 22466232, at *2 (E.D. La. 2003)). This is consistent with the law in this area. *See e.g., Benson v. Rosenthal*, 2016 WL 3001129, at *6 (E.D. La. 2016) ("[T]he weight of authority among courts that have confronted this issue in the context of discovery is that the federal law of privilege governs even where the evidence sought might be relevant to pendent state law claims.")

8

(citing cases); *Porter v. Dauthier*, 2014 WL 6674468, at *3 (M.D. La. 2014) ("In cases involving federal and state claims, when the requested evidence relates to both the state and federal claims and the privilege rules conflict, courts have generally applied federal privilege law.") (citing cases); *Guzman v. Memorial Hermann Hosp. System*, 2009 WL 427268, at *4 (S.D. Tex. 2009) ("In cases in which there are federal and state claims, the evidence at issue is relevant to both, and the privilege rules conflict, courts have generally applied federal privilege law, especially if federal law makes the evidence admissible and state law prevents admission.") (citing cases); *Naquin v. UNOCAL Corp.*, No. Civ. A. 01-3124, 2002 WL 1837838, at *3 (E.D. La. 2002) ("For the reasons stated in the cases cited above, I conclude 'that the federal law of privilege provides the rule of decision with respect to privilege issues affecting the discovery of evidence in this federal question case involving pendent state law claims.'") (quoting *In re Combustion, Inc.*, 161 F.R.D. 51, 53 (W.D.La. 1995)).[1]

Additionally, federal courts do not protect peer review materials in civil rights cases. The weight of authority is that there is no peer review privilege under federal common law or federal statutory law in civil rights or antitrust actions. *See, e.g., Adkins v. Christie*, 488 F.3d 1324, 1330 (11th Cir. 2007) (racial discrimination action); *Virmani v. Novant Health, Inc.*, 259 F.3d 284, 289 (4th Cir. 2001) (racial discrimination action); *Mem'l Hosp. v. Shadur*, 664 F.2d 1058, 1063 (7th Cir. 1981) (per curiam) (antitrust action); *Sabatier v. Barnes*, 2001 WL 175234, at *2-3 (E.D. La. Feb. 22, 2001) (recognizing that the Fifth Circuit has not recognized the federal peer review privilege); *Martinez v. Allison*, No. 11-1749, 2014 WL 5305566, at *2 (E.D. Cal. Oct. 15, 2014)

---

[1]  *See also Gilbreath v. Guadalupe Hosp. Foundation, Inc.*, 5 F.3d 785, 791 (5th Cir. 1993); *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000); *Virmani v. Novant Health Inc.*, 259 F.3d 284, 286 n.3 (4th Cir. 2001) ("We agree with our sister circuits that in a case involving both federal and state law claims, the federal law of privilege applies."); *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992) (same); *Memorial Hosp. v. Shadur*, 664 F.2d 1058, 1061 & n.3 (7th Cir. 1981) (same).

(declining to recognize self-critical analysis privilege in Eighth Amendment excessive-force claim); *Medina v. Cnty. of San Diego*, No. 08-1252, 2014 WL 4793026, at *7 (S.D. Cal. Sept. 25, 2014) (rejecting assertion of self-critical analysis privilege in § 1983 action); *Zoom Imaging v. St. Luke's Hosp. & Health Network*, 513 F.Supp.2d 411, 415-16 (E.D. Pa. 2007) (antitrust action); *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 561 (S.D.N.Y. 1996) (racial discrimination action).

Courts have declined to recognize a peer review privilege in civil rights cases because peer review materials in such actions have been deemed essential to the plaintiff's case. *See Univ. of Pa.*, 493 U.S. at 193; *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 558-59 (S.D.N.Y.1996); *Johnson v. Dart*, 309 F.Supp.3d 579, 582 (N.D. Ill. 2018); *Jenkins v. DeKalb Cnty., Georgia*, 242 F.R.D. 652, 660 (N.D. Ga. 2007); *Estate of Belbachir v. County of McHenry*, No. 06 C 01392, 2007 WL 2128341 at *6-*7 (N.D. Ill. July 25, 2007); *Weiss ex rel. Estate of Weiss v. County of Chester*, 231 F.R.D. 202, 206-07 (E.D. Pa. 2005).

The cases relied on by CorrectHealth are not civil rights cases involving deliberate indifference. *See Objection*, at 7 n.8. Many of them are medical malpractice practices. *Id.* (citing *Veith v. Portage County, Ohio*, 2012 WL 4850197 (N.D.Ohio. 2012); *Francis*, supra, 2011 WL 2224509; *Sevilla v. U.S.*, 852 F.Supp.2d 1057 (N.D.Ill. 2012), *Bredice v. Doctors Hospital, Inc.*, 50 F.R.D. 249 (D.D.C. 1970); *Spinks v. Children's Hospital. Nat. Med. Ctr.*, 124 F.R.D. 9 (D.D.C. 1989); *Utterback v. U.S.*, 121 F.R.D. 297 (W.D.Ky. 1987).

Two of CorrectHealth's cases were brought under the Federal Tort Claims Act: *Weekoty v. U.S.*, 30 F.Supp.2d 1343, 1344 (D.N.M.,1998) and *Gillman v. U.S.*, 53 F.R.D. 316, 317 (S.D.N.Y., 1971). One is a defamation case: *See Brem v. DeCarlo, Lyon, Hearn & Pazourek, P.A.*, 162 F.R.D. 94 (D.Md. 1995). From the opinion, it is difficult to ascertain the causes of action at issue in *Balk v. Dunlap*, 163 F.R.D. 360, 361 (D. Kan. 1995) (third party "seeks to avoid production

of its cautery machines and related documents and "all original minutes of the OB/GYN staff for 1990 to the present time.").

The reason for disclosure is greater in jail or prison cases involving suicide. "The importance of public scrutiny of medical and mental-health care is greater in the prison and jail contexts than in an ordinary medical-malpractice case[.]" *Dunn v. Dunn*, 163 F.Supp.3d 1196, 1207 (M.D. Ala. 2016).

In the prison context, it is particularly important that the public have access to peer assessments of care provided. *Williams v. City of Philadelphia*, 2014 WL 5697204, at *4; *Dunn v. Dunn*, 163 F.Supp.3d 1196, 1207 (M.D. Ala., 2016).[2] Unsurprisingly, "nearly every United States district court that has addressed the issue in the context of section 1983 litigation brought on behalf of jail or prison inmates has rejected the assertion of privilege." *Dunn v. Dunn*, 163 F.Supp.3d 1196, 1206–07 (M.D. Ala., 2016) (citing *Jenkins*, 242 F.R.D. at 659 (citing cases)[9]; *see also Francis v. United States*, 2011 WL 2224509, at *4 (S.D.N.Y. 2011) (Fox, M.J.) ("[T]here appears to be consensus among lower courts and in other circuits that no federal privilege protects medical peer review materials in civil rights [actions].").

The Ninth Circuit stated that, "in the prison context[,] the safety and efficiency of the prison" render it "peculiarly important that the public have access to the assessment by peers of

---

[2] Indeed, in several cases similar to this one, federal courts have ordered disclosure of a mortality reviews involving suicides in a jail. *Williams v. City of Philadelphia*, Civil Action No. 08-1979, 2014 WL 5697204, at *1 (E.D. Pa. Nov. 4, 2014) (holding that self-critical analysis privilege may not be asserted to protect against discovery of mortality and sentinel event reviews for inmate deaths which Corizon Health, Inc., the jail's contracted medical service provider, produced); *McClendon v. City of Albuquerque*, Case No. 95 CV 024 JAP/ACT, 2015 WL 13667177, at *6 (D.N.M. Oct. 13, 2015) (stating that the self-critical analysis privilege may not be asserted successfully in prison and jail condition cases to protect discovery of mortality review documents, because those documents will be produced regardless whether they are privileged, so there is no chilling effect at risk); *Tortorici v. Goord*, 216 F.R.D. 256, 258-59 (S.D.N.Y. June 10, 2003) (holding that self-critical analysis privilege did not protect against disclosure of quality assurance documents produced pursuant to statute requiring formal review following inmate suicide); *Laaman v. Powell*, No. CIV. 75-258-SD, 1995 WL 54417, at *1 (D.N.H. Feb. 9, 1995) (declining to apply the self-critical analysis privilege in the prison context to protect against discovery of documents produced pursuant to the Department of Corrections' Quality Assurance Program).

the care provided." *Tanner v. McMurray*, 2019 WL 2008991, at \*58 (D.N.M., 2019) (citing *Agster v. Maricopa Cty.*, 422 F.3d 836, 839 (9th Cir. 2005)). Similarly, in *Williams*, the Court noted that permitting the jail's medical services provider "to withhold the mortality and sentinel-event reviews does not promote sufficiently important interests to outweigh the need for probative evidence." 2014 WL 5697204, at \*4.

CorrectHealth relies heavily on *Hadix v. Caruso* that recognized the existence of a medical peer-review privilege. *See Objection*, at 7 & 7 ns. 8 -9 (citing *Hadix v. Caruso*, 2006 WL 2925270, at \*2 (W.D. Mich. 2006)). *Hadix* is inapplicable for a few reasons. First, there was no protective order in place that could minimize any arguable chilling effect from disclosing the records. Second, *Hadix's* contention that "an evaluation of the prisoner's medical records was enough to satisfy the prisoner's discovery requests" is not applicable here when Plaintiff must prove policies and customs inside a jail. *Cf. Jenkins*, 242 F.R.D. at 660–61 (noting "the extreme difficulty prison inmates often face in obtaining evidence of jail customs or policies,"; and concluding that "[t]o the extent that Hadix has any persuasive value, it disappears in the context of a section 1983 claim involving more than mere malpractice"). Third, there is not an independent way to access the substance of the materials in this case. *See Lowe v. Vadlamudi*, 2012 WL 3887177, at \*5 (E.D. Mich. 2012) (distinguishing and rejecting *Hadix* on the ground that, in *Hadix*, "the court found that disclosure of such records was not necessary in part because an independent medical monitor had been appointed in that case").

Specifically, no state statutory peer review privilege exists for mortality reviews for a death in a City owned jail. "Federal law recognizes no privilege of peer review in the context of a case involving the death of a prisoner." *Agster v. Maricopa County*, 422 F.3d 836, 837 (9th Cir. 2005). "It appears that every United States Court of Appeals that has addressed the issue of whether there

is a federal medical peer review privilege has rejected the claim." *Jenkins v. Dekalb County*, 242 F.R.D. 652, 659 (N.D. Ga. 2007). *See, Adkins v. Christie*, 488 F.3d at 1329 ("[W]e conclude that the medical peer review process does not warrant the extraordinary protection of an evidentiary privilege in federal civil rights cases."); *Virmani v. Novant Health, Inc.*, 259 F.3d 284, 289 (4th Cir.2001); *Mem'l Hosp. v. Shadur*, 664 F.2d 1058, 1063 (7th Cir.1981) (per curiam).[3]

In *Agster*, 422 F.3d at 836, the parents of a prison inmate who died while in custody sought mortality review documents prepared by Correctional Health Services (CHS), but CHS asserted the self-critical analysis privilege. *Id.* at 838. In upholding the denial of the privilege, the Ninth Circuit reasoned:

> Whereas in the ordinary hospital setting it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered.. . . [I]t is particularly important that the public have access to the assessment by peers of the care provided. Given the demands for public accountability . . ., we are not convinced by the County's argument that such reviews will cease unless kept confidential by a federal peer review privilege. Accordingly, we are unwilling to create the privilege in this case.

*Id.* at 839. *See also Grabow v. County of Macomb*, Case No. 12-10105, 2013 WL 3354505, *6 (E.D. Mich. July 3, 2013) (holding that self-critical analysis privilege may not be asserted in § 1983 cases because federal law does not recognize this privilege and requiring Correctional Medical Services, Inc. to produce mortality review of plaintiff's decedent's suicide).

---

[3] *See also, Nilavar v. Mercy Health System-Western Ohio*, 210 1032*1032 F.R.D. 597 (S.D. Ohio 2002); *Johnson v. United Parcel Serv., Inc.*, 206 F.R.D. 686 (N.D. Fla. 2002); *Mattice v. Memorial Hosp. of South Bend*, 203 F.R.D. 381 (N.D. Ind. 2001); *Leon v. County of San Diego*, 202 F.R.D. 631 (S.D. Cal. 2001); *Krolikowski v. University of Mass.*, 150 F.Supp.2d 246 (D. Mass. 2001); *Tucker v. United States*, 143 F.Supp.2d 619 (S.D. W.Va. 2001); *Marshall v. Spectrum Medical Group*, 198 F.R.D. 1 (D. Me. 2000); *Syposs v. United States*, 179 F.R.D. 406 (W.D. N.Y. 1998), adhered to upon reconsideration, 63 F.Supp.2d 301 (1999); *Holland v. Muscatine General Hosp.*, 971 F.Supp. 385 (S.D. Iowa 1997); *Price v. Howard County Gen. Hosp.*, 950 F.Supp. 141 (D. Md. 1996); *Robertson v. Neuromedical Ctr.*, 169 F.R.D. 80 (M.D. La. 1996); *Pagano v. Oroville Hosp.*, 145 F.R.D. 683 (E.D. Cal. 1993); *LeMasters v. Christ Hosp.*, 791 F.Supp. 188 (S.D. Ohio 1991); *Quinn v. Kent Gen. Hosp., Inc.*, 617 F.Supp. 1226 (D. Del. 1985); *Ott v. St. Luke Hosp. of Campbell County, Inc.*, 522 F.Supp. 706 (E.D. Ky. 1981); *Robinson v. Magovern*, 83 F.R.D. 79 (W.D. Pa. 1979).

In addition, courts in prison and jail conditions cases have rejected the argument that without the privilege, review committees would not be as effective. "Given the demands for public accountability [in cases involving the death of an inmate], which seem likely to guarantee that such reviews take place whether they are privileged or not, we are not convinced by the County's argument that such reviews will cease unless kept confidential by a federal peer review privilege." *Johnson v. Cook County*, No. 15 C 741, 2015 WL 5144365, *4 (N.D. Ill. Aug. 31, 2015) (slip op.) (citing *Agster*, 422 F.3d at 839).

This is the case here. This case involves a civil rights lawsuit against a parish jail for events surrounding a prisoner's suicide. Many interests pertaining to the public good are at stake. Hence, there seems no better place to reject the privilege than this case.

**III.   CorrectHealth is prevented from arguing burdensomeness or that the Court ordered production of documents beyond the scope of Plaintiffs' Requests for Production for the first time in this Court.**

Without presenting these arguments to the Magistrate Court, the Defendant argues for the first time here that the Ruling is clearly erroneous as (1) "it orders production of documents beyond the scope of Plaintiffs' Request for Production" and (2) "it orders production of documents that are overly burdensome to collect/produce and contain personal medical data." R. Doc. 83-1, at 3-4.

A party cannot argue on appeal to the District Court an issue they did not first present to the Magistrate Court. *Blessey Marine Services, Inc. v. Jeffboat, LLC*, 2011 WL 13202952, at *4 (E.D. La. 2011) (citing *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91-93 (3d Cir. 1992); *Blair v. Sealift*, 848 F.Supp. 670, 675 (E.D.La. 1994)). "It would therefore be improper for this Court to

set aside the Magistrate Judge's order based on material that was not put before him." *Blessey Marine Services, Inc.*, 2011 WL 13202952, at *4.

This appeal concerns a non-dispositive order subject to Rule 72(a) clear error review. *Moore v. Ford Motor Co.*, 755 F.3d 802, 808 (5th Cir. 2014).  "Because the district court's review of the magistrate judge's factual findings was limited to clear error review, there appears to be no basis for the district court to have received additional evidence." *Moore*, 755 F.3d at 808.

CorrectHealth has never argued burdensomeness with regard to requests for suicide attempts.  *See* R. Doc. 52, *Defendant's Brief in Opposition to Motion to Compel*, Sept. 3, 2019, at 6 (arguing burdensomeness regarding only its bid applications to Jefferson parish) (R. Doc. 52). It also did not object on burdensomeness to the pertinent discovery requests. *See* R. Doc. 45-3, *Defendant Responses to Discovery*, at 10-11 (Rog No. 14), 27 (RPD No. 24).  As a result, this objection was waived.  *Gaudet v. GE Industrial Services*, 2016 WL 2594812, at *3 (E.D. La. 2016) (citing *Moore*, 755 F.3d at 808).

The same is true for its argument that the Court ordered "production of documents beyond the scope of Plaintiffs' Request for Production."  *Objection*, at 4.  CorrectHealth did not argue this in front of the Magistrate Court.  Rather, it treated the requests as one requesting the psychological autopsy for three separate suicides. R. Doc. 52, *Defendant's Brief in Opposition to Motion to Compel*, Sept. 3, 2019, at 4-5; R. Doc. 45-3, *Defendant Responses to Discovery*, at 19 (RPD No. 3).  CorrectHealth is defaulted from making these arguments on appeal to this Court. Respectfully, the law does not allow this Court to reverse the Magistrate Court's Ruling based on these two arguments.

**IV.    Conclusion.**

WHEREFORE Plaintiffs respectfully request that the Court deny Defendant's appeal and affirm the ruling of the Magistrate Court.

Respectfully submitted,

/s Soren Gisleson
SOREN E. GISLESON La Bar No. 26302
JOSEPH ("Jed") CAIN La. Bar No. 29785
HERMAN, HERMAN & KATZ
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
Email: sgisleson@hhklawfirm.com

and

JOHN ADCOCK La Bar No. 30372
P.O. Box 750621
New Orleans, LA 70175
Tel: (504) 233-3125
Fax: (504) 308-1266
Email: jnadcock@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on all counsel of record by operation of the Court's electronic filing system on this 15th day of October, 2019.

S/Soren E. Gisleson