UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAYNE BELCHER ET AL.                              CIVIL ACTION

VERSUS                                            NO. 18-7368

JOSEPH LOPINTO, III ET AL.                        SECTION: "H"

ORDER AND REASONS

Before the Court are Defendants CorrectHealth Jefferson, LLC and Ironshore Specialty Insurance Company's Motion in Limine to Exclude the Opinions of Dr. Colley and Dr. Venters Relating to the Applicable Standard of Care (Doc. 130). For the following reasons, the Motion is **DENIED**.

BACKGROUND

This action arises out of Joshua Belcher's suicide at the Jefferson Parish Correctional Center ("JPCC") in Gretna, Louisiana, where he was being held as a pretrial detainee. Following his death, Belcher's parents, Jayne and Jimmy Belcher ("Plaintiffs"), filed this suit, alleging violations of § 1983 and state law against Joseph P. Lopinto, III and Newell Normand, as the current and former Sheriffs of Jefferson Parish, respectively; Jefferson Parish; CorrectHealth Jefferson, L.L.C. ("CH"), the entity with whom Jefferson Parish contracted to provide healthcare services at JPCC; and Ironshore Specialty Insurance Co., the insurance provider for CH. Plaintiffs' claims against the

1

Sheriffs and Jefferson Parish have been dismissed, leaving only Plaintiffs' claims against CH and Ironshore.

Plaintiffs claim that CH's treatment of Belcher at JPCC demonstrates a policy of deliberate indifference. In the first few days after Belcher was arrested, he exhibited multiple symptoms of alcohol and drug withdrawal. Six days after he entered JPCC, on August 13, 2017, Belcher attempted suicide and was subsequently placed on suicide watch. David Jennings, a social worker for CH, was in charge of monitoring Belcher's mental health while Belcher was on suicide watch. Jennings conducted two, ten to twenty-minute, evaluations of Belcher while he was in the infirmary. In the second evaluation, on August 15, 2017, Jennings found that Belcher's mental health had improved and believed Belcher's withdrawal symptoms had abated. Shortly thereafter, without conducting any psychological or diagnostic assessment, Jennings discharged Belcher from suicide watch, authorized his release to general population, and ordered that a follow-up evaluation be scheduled for one week later. Belcher committed suicide in his cell two days later. Plaintiffs plan to present the expert testimony of Dr. Jeremy Huston Colley and Dr. Homer Venters to demonstrate that CH's treatment of Belcher constitutes a gross deviation from the appropriate standard of care in the correctional setting.

CH and Ironshore now bring their Motion in Limine to Exclude the opinions of Dr. Colley and Dr. Venters Relating to the Applicable Standard of Care.

**LEGAL STANDARD**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

> opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The current version of Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[1] and *Kumho Tire Co. v. Carmichael*.[2] The threshold inquiry is whether the expert possesses the requisite qualifications to render an opinion on a particular subject matter.[3] Having defined the permissible scope of the expert's testimony, a court next inquires whether the opinions are reliable and relevant.[4] In undertaking this tripartite analysis, courts must give proper deference to the traditional adversary system and the role of the finder of fact within that system.[5] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[6] As the "gatekeeper" of expert testimony, the trial court enjoys broad discretion in determining admissibility.[7]

---

[1] 509 U.S. 579 (1993).
[2] 526 U.S. 137 (1999).
[3] Wagoner v. Exxon Mobil Corp., 813 F. Supp. 2d 771, 799 (E.D. La. 2011); *see also* Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.").
[4] *See* United States v. Valencia, 600 F.3d 389, 424 (5th Cir. 2010).
[5] *See Daubert*, 509 U.S. at 596.
[6] *Id.*
[7] Wellogix, Inc. v. Accenture, L.L.P., 716 F.3d 867, 881 (5th Cir. 2013).

## LAW AND ANALYSIS

Plaintiffs intend to introduce the expert testimony of Dr. Venters and Dr. Colley on the adequacy of care that CH provided to the decedent, Belcher. Defendants argue that, under the "locality rule" of Louisiana Revised Statutes § 9:2794, the standard of care against which CH's actions should be measured is that of a "similar community or locale and under similar circumstances."[8] As neither Dr. Venters nor Dr. Colley has practiced medicine within the state of Louisiana or is "familiar with the standard of care applicable to Louisiana correctional healthcare," Defendants argue that neither expert is qualified to testify on the standard of care applicable to this case. Defendants therefore move to exclude each doctor's testimony accordingly.

Defendant's entire argument is premised on the applicability of Louisiana Revised Statutes § 9:2794. Louisiana's "locality rule," however, is inapplicable to the current matter. "Although state law governs the substance of Plaintiff[s'] [state law claims] against [Defendants], 'the Federal Rules of Evidence control the admission of expert testimony.'"[9] It is thus whether Plaintiffs' experts are qualified to testify under Federal Rule of Evidence 702, not Louisiana Revised Statute § 9:2794, that will control the admissibility of Dr. Colley and Dr. Venters' testimonies.[10]

"Whether an individual is qualified to testify as an expert is a question of law."[11] Under Federal Rule of Evidence 702, "[e]xperts qualified by 'knowledge, skill, experience, training or education' may present opinion

---

[8] LA. REV. STAT. § 9:2794(A)(1).
[9] Rodgers v. Gusman, No. CV 16-16303, 2019 WL 3220107, at *7 (E.D. La. July 17, 2019) (quoting Huss v. Gayden, 571 F.3d 442, 452 (5th Cir. 2009)).
[10] *See id.* In *Rodgers*, this Court refuted the applicability of the same Louisiana case, Berthelot v. Stadler, 2013 WL 3947106 (La. App. 1 Cir. 2013), that Defendants cite in support of their present motion. *Id.*
[11] Huss v. Gayden, 571 F.3d 442, 452 (5th Cir. 2009).

testimony to the jury."[12] An expert need not be "highly qualified in order to testify about a given issue."[13] Variances in expertise or specialization may affect the "weight to be assigned to the testimony by the trier of fact, not its admissibility."[14]

Applying the above, Dr. Colley and Dr. Venters are patently qualified to testify on the quality of care that CH provides at JPCC. Dr. Colley graduated from medical school at Columbia University, completed his fellowship in Forensic Psychiatry at New York University, received certifications from the American Board of Psychiatry and Neurology in Adult Psychiatry and Forensic Psychiatry, and most recently served as the Program Director of the Fellowship in Forensic Psychiatry at New York University.[15] Of particular relevance, Dr. Colley's research focus includes the "[e]valuation, treatment, and ethics related to [f]actitious [d]isorders in [c]orrectional [s]ettings" and the "[h]arms of solitary confinement."[16] Dr. Colley is therefore qualified to offer testimony as to the standard of care afforded to suicidal inmates at JPCC.

Dr. Venters is similarly suited to testify in this matter. Dr. Venters is "a physician, internist and epidemiologist with over a decade of experience in providing, improving and leading health services for the incarcerated."[17] Dr. Venter's resumé includes a long list of accolades, publications, and oral presentations that demonstrate his expertise in both mental and physical health services at correctional facilities. Notably, he served as Assistant Commissioner and Chief Medical Officer of the New York City Jail

---

[12] *Id.* (quoting FED. R. EVID. 702).
[13] *Huss*, 571 F.3d at 452.
[14] *Id.*; *see also* United States v. Wen Chyu Liu, 716 F.3d 159, 168–69 (5th Cir. 2013); *Rodgers*, 2019 WL 3220107, at *7.
[15] Doc. 130-5. at 16–18.
[16] Doc. 130-5 at 19.
[17] Doc. 130-4 at 1.

Correctional Health Service, where he "was responsible for all aspects of health services including physical and mental health, addiction, quality improvement, re-entry and morbidity and mortality reviews."[18] Dr. Venters' extensive experience in prison healthcare systems qualifies him to testify as to the standard of care that should have been exercised at JPCC.

As stated above, the extent of Dr. Venters and Dr. Colley's experience with Louisiana standards will go to the weight of their testimonies, not their admissibility. Even so, the Court notes that Louisiana standards play, at most, a minor role in either expert's report. In Dr. Colley's report, he compares CH's practices to the standard of care articulated by the American Psychiatric Association, the National Commission on Correctional Health Care ("NCCHC"), federal court orders and consent decrees, and the widely cited case of *Ruiz v. Estelle*.[19] In Dr. Venters' report, he compares CH's practices to the "most elemental standards of NCCHC, as well as basic correctional practice."[20] Both experts focus on national standards because it is a national standard, that of the NCCHC, that CH contractually obligated itself to meet. As neither expert opines on the standard of care in Louisiana, Defendants' contention that the experts are unfamiliar with Louisiana standards is largely inconsequential.

This Court thus finds that under Federal Rule of Evidence 702, both Dr. Colley and Dr. Venters are qualified to testify in this matter despite lacking locality-specific expertise.

---

[18] *Id.*

[19] *See* Doc. 130-5 at 6; *Ruiz v. Estelle*, 503 F. Supp. 1265, 1339 (S.D. Tex. 1980), *aff'd in part, rev'd in part*, 679 F.2d 1115 (5th Cir. 1982), *amended in part, vacated in part*, 688 F.2d 266 (5th Cir. 1982). Colley contends that the standards articulated in *Ruiz* have been adopted nationally.

[20] Doc. 130-4 at 6.

## CONCLUSION

For the foregoing reasons, Defendants CorrectHealth and Ironshore's Motion in Limine (Doc. 130) is **DENIED**.

New Orleans, Louisiana this 2nd day of October, 2020.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**