UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAYNE BELCHER ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-7368** |
| **JOSEPH LOPINTO, III ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Plaintiffs' Motion to Review the Magistrate Court's Order of August 27, 2020 (Doc. 186). For the following reasons, Plaintiffs' Motion is **DENIED** and the Magistrate Court's Order is **AFFIRMED**.

## BACKGROUND

This action arises out of Joshua Belcher's suicide at the Jefferson Parish Correctional Center ("JPCC") in Gretna, Louisiana, where he was being held as a pretrial detainee. Following his death, Belcher's parents, Jayne and Jimmy Belcher ("Plaintiffs"), filed this suit, alleging violations of § 1983 and state law against Joseph P. Lopinto, III and Newell Normand, as the current and former Sheriffs of Jefferson Parish, respectively; Jefferson Parish; CorrectHealth Jefferson, L.L.C. ("CH"), the entity with whom Jefferson Parish contracted to provide healthcare services at JPCC; and Ironshore Specialty Insurance Co., the insurance provider for CH. Plaintiffs' claims against the Sheriffs and Jefferson Parish have been dismissed, leaving only Plaintiffs' claims against CH and Ironshore.

Plaintiffs claim that CH's treatment of Belcher at JPCC demonstrates a policy of deliberate indifference. As evidence of such a policy, Plaintiffs intend to introduce evidence of other suicides at JPCC. At issue are two of Plaintiffs' discovery requests to CH that relate to additional suicides at JPCC. The first request is Interrogatory No. 6, which states: "Please identify any and all deaths within the Jefferson Parish Correctional Center from January 1, 2009 to the present. Please include the inmate name and cause of death for each instance."[1] The second discovery request at issue is Request for Production No. 7, which states: "Please produce any and all weekly, monthly, quarterly and yearly reports submitted by you to Jefferson Parish, including, but not limited to reports of deaths and/or suicide attempts at the Jefferson Parish Correctional Facility (Gretna Jail) as well as any events that may give rise to litigation."[2] Similar requests were propounded to all the Defendants, and Plaintiffs received information relating to two suicides, that of Jerome Bell and Jatory Evans, that were committed shortly before and after Joshua Belcher's suicide.

Recently, Plaintiffs learned from outside sources that there had been two additional suicides at JPCC—Marshall Guillot on June 5, 2019, and Shallen Richoux on July 26 or 27, 2020. Plaintiffs filed a Motion for Sanctions, alleging that the Defendants[3] had failed to supplement their discovery responses with information relating to Guillot and Richoux's suicides. The motion was referred to Magistrate Currault.

In Plaintiffs' Motion for Sanctions, Plaintiffs asked for: "(1) production of all documents related to Guillot's suicide and Richoux's death; (2) leave to

---

[1] Doc. 172-6 at 6.
[2] *Id.* at 20.
[3] At the time Plaintiffs filed their Motion for Sanctions, Defendants Newell Normand, Joseph Lopinto, and Jefferson Parish had not yet been dismissed from the suit.

amend Plaintiffs' Witness and Exhibit List; and (3) attorneys' fees related to the filing of this motion."[4] On August 26, 2020, after oral argument on the motion, Magistrate Currault denied Plaintiffs' Motion for Sanctions but ordered "that, on or before September 9, 2020, Defendants shall produce documents to Plaintiffs the same type of documents and information relating to Marshall Guillot and any other suicide occurring at the facility up through December 18, 2019, as was previously produced relating to Jatory Evans and Jerome Bell."[5] Magistrate Currault also clarified that Defendants were not required to produce documents related to non-suicide deaths at JPCC.[6]

Currently before the Court is Plaintiffs' Motion to Review the Magistrate Court's Order of August 26, 2020. Plaintiffs do not appeal the entirety of Magistrate Currault's order, but rather only appeal the part of the order that requires Defendants to provide Plaintiffs with information relating to suicides occurring "up through December 18, 2019."[7] Plaintiffs allege that Defendants have a legal duty to continue supplementing discovery until the date of trial. Plaintiffs therefore argue that the Magistrate-imposed deadline was clearly erroneous and contrary to law and ask this Court to "order Defendants to produce evidence of other suicides in the JPCC that occur between the discovery deadline (December 19, 2019) and the date of trial (May 13, 2020)."[8] CH opposes Plaintiffs' appeal of the Magistrate decision.

---

[4] Doc. 172 at 1.
[5] Doc. 184 at 1–2.
[6] *Id.* at 2.
[7] *Id.* at 1–2.
[8] Doc. 186-1 at 3.

## LEGAL STANDARD

With the consent of the presiding district judge, a magistrate judge may adjudicate non-dispositive pre-trial motions.[9] A magistrate judge is afforded broad discretion in resolving non-dispositive, pre-trial matters.[10] A party aggrieved by the magistrate judge's ruling may appeal to the district judge within fourteen days after service of the ruling.[11] The district judge may reverse only upon a finding that the ruling is "clearly erroneous or contrary to law."[12] In order to meet this high standard, the district judge must be "left with a definite and firm conviction that a mistake has been committed."[13]

## LAW AND ANALYSIS

Plaintiffs argue that Magistrate Currault's ruling was clearly erroneous as it implicitly held that the duty to supplement discovery terminates at the discovery deadline rather than the date of trial. Federal Rule of Civil Procedure 26(e) requires a party "who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission" to supplement his responses if he learns that the disclosure was incomplete or incorrect.[14] The Advisory Notes to the 1993 Amendment of Rule 26(e) explain that "supplementations should be made at appropriate intervals during the discovery period, and with special promptness as the date approaches."[15] Neither the Federal Rules nor the Advisory Notes, however, advise as to whether the duty to supplement applies to documents created, or

---

[9] 28 U.S.C. § 636(b)(1)(A).
[10] McCallon v. BP Am. Prod. Co., Nos. 05–0597, C/W 05–0700, 2006 WL 3246886, at *2 (E.D. La. Nov. 8, 2006).
[11] Fed. R. Civ. P. 72(a).
[12] 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).
[13] Yelton v. PHI, Inc., 284 F.R.D. 374, 376 (E.D. La. 2012) (internal quotation marks omitted).
[14] Fed. R. Civ. P. 26(e)(1)(A)–(B).
[15] Advisory Committee Notes to the 1992 Amendment to Fed. R. Civ. P. 26(e).

events that occur, after the close of discovery,[16] and the Fifth Circuit has yet to speak on the matter. Further, district courts that have addressed this issue have reached varying conclusions.[17] As there is no clear directive as to whether the duty to supplement encompasses material created after the close of discovery, this Court cannot say that Magistrate Currault's finding was clearly erroneous or contrary to law.

Further, many courts that have found a continuing duty to supplement discovery with material produced after the discovery deadline have also noted the discretionary nature of this decision.[18] For example, Plaintiffs cite to *Iweala v. Operational Tenchologies Services, Inc.*,[19] where the United States District Court for the District of Columbia analyzed whether the duty to supplement extended to materials created after the close of discovery. After reviewing the language of the Federal Rule, the Advisory Notes, and relevant case law, the *Iweala* court came to the conclusion that "the duty to supplement certain discovery disclosures *can* extend beyond the close of discovery."[20]

---

[16] *See* Iweala v. Operational Techs. Servs., Inc., No. CV 04-02067 (RWR), 2010 WL 11583114, at *1 (D.D.C. Apr. 13, 2010).

[17] *See* Pharmacy, Inc. v. Am. Pharm. Partners, Inc., No. CV 05-776 DRH AKT, 2008 WL 4415263, at *3 (E.D.N.Y. Sept. 24, 2008) ("[A] party is under no duty to produce documents which did not exist prior to the close of discovery."). *But see also* Gamevice, Inc. v. Nintendo Co., No. 18-CV-01942-RS (TSH), 2019 WL 5565942, at *2 (N.D. Cal. Oct. 29, 2019) (finding that "the fact discovery cutoff does not terminate the obligation to supplement" and ordering updated financial information that encompassed periods beyond the discovery deadline).

[18] The court notes that a finding of court discretion in the duty to supplement is consistent with the language of the Federal Rules and the Advisory Notes. Federal Rule 26(e)(1)(A–B) states that supplementation is necessary when a party learns that the response is incomplete or incorrect or "as ordered by the court." The Advisory Committee Notes for the 1993 Amendment add that "[i]t may be useful for the scheduling order to specify the time or times when supplementations should be made."

[19] 2010 WL 11583114.

[20] *Id.* at *2 (emphasis added); *see also* Episcopo v. Gen. Motors Corp., No. 02 C 8675, 2004 WL 628243, at *7 (N.D. Ill. Mar. 29, 2004), *aff'd*, 128 F. App'x 519 (7th Cir. 2005) ("[T]he language of Rule 26(e)(2) is broad enough to require supplemental disclosures *under certain circumstances*, regardless of whether discovery had closed, and is consistent with the spirit

5

Accordingly, courts have exercised their discretion to find a duty to supplement discovery with *post hoc* material where such material was relevant to the matter and non-prejudicial to the producing party.[21]

In the current matter, the Court finds that evidence of suicide attempts at JPCC following Joshua Belcher's death is of questionable relevance. Plaintiff relies on *Grandstaff v. City of Borger, Tex.*,[22] for the proposition that post-incident conduct is probative of the existence of a custom or policy. At least one court within the Fifth Circuit, however, has found *Grandstaff* distinguishable and precluded evidence of later suicides to demonstrate a policy of deliberate indifference.[23] The Court has not yet ruled on whether suicides subsequent to Belcher's at JPCC are admissible at trial, and the Court declines to do so now. The Court does note, however, that given the questionable relevance of all subsequent suicides at JPCC, the relevance of suicides committed after December 18, 2019—over two years after Belcher's suicide—is certainly diminished.

In *Lewis v. East Baton Rouge Parish*, the Middle District of Louisiana recognized the uncertain relevance that subsequent suicides hold in a § 1983 action but still found such evidence discoverable as it "may lead to the

---

behind the discovery rules, which is to promote a liberal discovery process 'in an effort to narrow the issues for trial and to prevent unfair surprise.'" (emphasis added and internal citations omitted)).

[21] *See* Everlight Elecs. Co. v. Nichia Corp., No. 12-CV-11758, 2015 WL 412184, at *2–3 (E.D. Mich. Jan. 30, 2015) (granting the motion to compel the production of updated sales information, as it was relevant to the calculation of damages at trial, but denying the motion to compel as to "new versions of accused products." As to the new products, the *Everlight* court found that "this type of discovery supplementation will ultimately result in the need to move the trial date to provide the experts adequate time to supplement their infringement opinions and for the parties to digest the revised opinions.").

[22] 767 F.2d 161 (5th Cir. 1985).

[23] *See* Nagle v. Gusman, No. CV 12-1910, 2016 WL 9411375, at *2 (E.D. La. Mar. 8, 2016).

discovery of admissible evidence."[24] As discovery has closed in this case, such disclosures could not lead to the discovery of additional admissible evidence. To the contrary, CH's disclosure of suicides at JPCC committed after the discovery deadline would likely be the sort of disclosure that would interfere with the parties' abilities to timely prepare for trial.[25] This Court therefore finds that Magistrate Currault's limitation on the duty to supplement was reasonable and not clearly erroneous.

Plaintiffs rely heavily on the case of *United States v. State*, where the Middle District of Louisiana found that the obligation to continuously supplement discovery was "in no way limited by the discovery deadlines imposed by the Court's Scheduling Order pursuant to Rule 16."[26] *United States v. State* is distinguishable, however, as the court was addressing a document created after "Phase 1 of discovery," not the close of all discovery. Additionally, the court in *State* had previously found that the "key allegations" were of "continuous violation[s]," highlighting the relevance of the later-created report.[27] Unlike the plaintiffs in *United States v. State*, Plaintiffs need not prove an ongoing violation as they have not requested prospective relief.[28] Further, for the reasons already stated above, this Court finds evidence of suicides at JPCC after December 18, 2019, of minimal relevance. This Court therefore fails to find *United States v. State* instructive.

Finally, in affirming Magistrate Currault's August 26, 2020 Order, this Court clarifies that CH is indeed under a duty to supplement the relevant

---

[24] Lewis v. E. Baton Rouge Par., No. CV 16-352-JWD-RLB, 2018 WL 3862044, at *4 (M.D. La. Aug. 13, 2018).
[25] *See e.g., Everlight*, 2015 WL 412184, at *2–3.
[26] United States v. State, No. CV 11-470-JWD-RLB, 2015 WL 5595630, at *2 (M.D. La. Sept. 21, 2015).
[27] *Id.*
[28] *See id.*

discovery requests with information about suicide attempts at JPCC prior to December 18, 2019. In CH's opposition to this Motion, CH argued that Magistrate Currault never ruled on the duty to supplement, but rather ordered a production of documents unrelated to any existing discovery request. Having reviewed the transcript from the oral argument before Magistrate Currault on August 26, 2020, this Court disagrees. Both Interrogatory No. 5 and Interrogatory No. 6 ask CH to identify all suicide attempts/deaths "from January 1, 2009 to the present."[29] Request for Production No. 7 requests copies of reports that CH has submitted to Jefferson Parish related to suicide attempts at JPCC. CH argues that these requests are "self-limiting" or that prior Court orders have limited their duration. Finding neither of these allegations true, this Court affirms Magistrate Currault's Order as an order requiring CH to supplement prior discovery responses. Accordingly, this supplementation shall be "of the same type of documents and information relating to Marshall Guillot and any other suicide occurring at the facility up through December 18, 2019, as was previously produced relating to Jatory Evans and Jerome Bell."[30]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Review the Magistrate Court's Order (Doc. 186) is **DENIED**.

New Orleans, Louisiana this 19th day of October, 2020.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE

---

[29] Doc. 172-6 at 5–6.
[30] Doc. 184 at 1–2.